**Murrell MAXWELL, 429–82–5169, Plaintiff,**

**v.**

**Louis SULLIVAN, M.D., Secretary of Health and Human Services, Defendant.**

**No. 91 C 3683.**

United States District Court, N.D. Illinois, E.D.

April 27, 1992.

Mark D. DeBofsky, Chicago, Ill., for plaintiff.

Craig Oswald, Asst. U.S. Atty., Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Murrell Maxwell ("Maxwell") seeks judicial review of a final decision of Secretary of Health and Human Services ("Secretary") Louis Sullivan denying Maxwell's claim for disability insurance benefits under Social Security Act ("Act") §§ 216(i) and 223 (42 U.S.C. §§ 416(i) and 423) and for supplemental security income ("SSI") benefits under the corresponding provisions of the Act (42 U.S.C. §§ 1381–1383).[1] As is usual in these cases, both sides now move for summary judgment.[2] For the reasons stated in this memorandum opinion

---

**1.** All further statutory references will take the form "Section—," using the Title 42 numbering rather than the Act's internal numbering. All portions of 20 C.F.R. will be cited "Reg. § —."

**2.** What follows in the "Facts" section of this opinion, drawn as it is from the administrative record ultimately brought to Secretary for decision, is not in dispute. Hence this case does not pose the usual cross-summary-judgment-motion challenge of drawing "those inferences that are reasonable" in the light most favorable to each nonmovant (see *Bank Leumi Le–Israel, B.M. v. Lee,* 928 F.2d 232, 236 (7th Cir.1991)). All citations to the Administrative Record (the sole point of reference needed to decide the issues) will take the form "R.—."

and order, both motions are denied and this case is remanded to Secretary for further proceedings.

## Facts

Maxwell, born on September 23, 1942, is a high school graduate (R. 32). Between 1968 and March 1989 Maxwell was employed as a liquor store cashier, a job that required him to stand for most of his 8–hour shift (R. 50, 52). In addition he was required to perform maintenance duties such as cleaning, mopping, window washing and shoveling snow and was also frequently called upon to lift objects weighing about 35 pounds, with an occasional lifting chore involving objects weighing up to 75 pounds (R. 30–31, 51–52). Maxwell was fired in March 1989 because of his inability to perform those tasks (R. 30–31). He has not been employed since that time.

### Maxwell's Testimony

Maxwell testified that he can walk for three blocks before experiencing pain in his lower back and right leg (R. 32) and can stand for eight or nine minutes before his right leg "gives way" (R. 32–33). He uses a cane for walking, although he said it was not prescribed by his doctor (R. 35). He is able to sit for 15–20 minutes before his back stiffens and his right leg becomes numb (R. 35), and upon getting up or sitting down he often experiences "muscle spasms" in his back that cause pain to shoot down his leg "[l]ike a needle" (R. 46). He can bend over only about one-third of the way to the floor (R. 36).

Maxwell is right-handed but cannot lift or pick up anything with that hand. For example, he cannot pick up bills or coins with his right hand although he can hold them in that hand, and he cannot hold objects such as dishes or coffee pots with his right hand. He can lift up to eight pounds with his left hand (R. 33–34).

Every day Maxwell takes 100 milligrams of Ansaid, a prescription that makes him drowsy. Although he is uncertain, he does not think that the medication helps much with his pain (R. 41). Maxwell says that his pain is usually unbearable and that it is tolerable for only two to three hours each day (R. 42). Maxwell's pain increases in cold weather (R. 41–42).

Maxwell lives alone in an apartment (R. 36–37). He is able to dress himself only with difficulty (R. 34–35)—he can button his shirt with his left hand but has trouble tying his shoes (R. 34–35). He is able to bathe himself, though he has problems getting in and out of the tub, and can brush his teeth and his hair with his left hand (R. 36–37). Maxwell does not drive because he does not "trust" his right leg (R. 38). He is able to ride the bus, although he has difficulty boarding (R. 48–49). Maxwell's girl friend, who visits about four times a week, does Maxwell's cooking, cleaning, laundry and grocery shopping (R. 37–38). She also helps him bathe and dress when she visits (R. 34–36).

On a typical day Maxwell watches television and sleeps on and off throughout the day (R. 41). Sometimes he goes with older friends on short walks of up to one block (R. 39). Maxwell also has difficulty sleeping because of his pain. He wakes up every 40 to 50 minutes because of pain in his lower back, then spends 10 to 15 minutes before falling back to sleep. Usually he sleeps in a chair rather than a bed (R. 39–40).

In addition to his pain Maxwell's "eyes are bad," a problem that he says prevents him from reading and makes it difficult for him to see the television. He often has difficulty concentrating, sometimes losing his thoughts in the middle of conversations (R. 47).

For the past five months Maxwell has been seeing his treating physician, internist Dr. Chao Chen, once or twice a week (although he had not seen him for two weeks before the hearing and did not know when he would see him again). Before that time Maxwell was not receiving medical care because he did not have insurance. Maxwell was hospitalized in 1964 due to his hernia, which was found to be too large for surgical intervention (R. 44–45).

### Medical Evidence

On January 30, 1990, shortly after he filed his application, Maxwell was exam-

ined by Dr. F. Rana, a consultative physician whose area of specialization (if any) is not indicated in the record (R. 110–12). Maxwell's complaints at the time were similar to those already discussed. He told Dr. Rana that he suffered from sharp pains and intermittent swelling in his fingers, hands and knees, lower back pain and occasional numbness in his right anterior thigh. He stated that he could walk for a maximum of two blocks and tired easily. In contrast to Maxwell's testimony, Dr. Rana reported that Maxwell denied having pain that radiated from his back to his legs. Maxwell also told Dr. Rana that his hernia sometimes ached but that he was afraid to have surgery.

Dr. Rana made the following observations (R. 111):

> There is a large right inguinal[3] hernia which extends into the scrotum. It is nontender and nonreducible.... Bones, Joints, and Muscles—there is no swelling, redness or tenderness of any joints. There is no limitation of motion of any joints. Gross and fine manipulation of either hand is normal. Examination of the spine is unremarkable. Extremities—there is no peripheral edema, ulcers or varicosities. Neurological—Gait is satisfactory. Motor power is normal. Reflexes are normoactive. Sensory system is intact.

Maxwell had "no difficulty in movement during examination," and his vision was essentially normal (R. 110). Dr. Rana's report included the results of several x-rays and laboratory tests, the former showing "mild arthritic changes" in Maxwell's right hand and mild scoliosis in his lumbar spine (R. 114), while the laboratory results were normal (R. 113).

Maxwell's treating physician, Dr. Chen, then examined him on March 19, 1990 (R. 123–28). Dr. Chen's diagnosis was arthritis (which Maxwell had developed 13 years ago), a right inguinal hernia (which Maxwell had developed at the age of 15) and obesity (Maxwell was 6 feet 1 inch tall and weighed 234 pounds). Dr. Chen noted swelling and tenderness in Maxwell's hand joints and tenderness in Maxwell's lower back and left ankle. He reported that Maxwell experienced "arthritic pain all over" (R. 125).

R. 124 contained a number of Dr. Chen's findings. There the doctor checked "weakness" as a functional abnormality but did not specify Maxwell's grip strength, nor did he check off any limitation in Maxwell's ability to perform fine or gross manipulation. He did find that Maxwell's range of motion in his lumbar spine was limited to 15 degrees on extension and 45 degrees on flexion. He also reported positive straight leg raising tests—35 degrees for the right leg and 45 degrees for the left leg. Contrary to Maxwell's testimony that his cane was not prescribed by a physician, Dr. Chen found that Maxwell required a cane to maintain his balance. He also noted that Maxwell walked with a limp but did not comment on Maxwell's ability to sit, stand, lift or carry.

After last examining Maxwell on September 6, 1990 Dr. Chen completed a September 23 "Degenerative Joint Disease (Arthritis) Report" (R. 148–52) and "Physical Capacities Evaluation" (R. 153–56). In the first report Dr. Chen noted pain and tenderness in Maxwell's lower back, knees and left ankle, but he found no structural changes or atrophy. He described the same range of motion and straight leg raising test results that he had earlier reported, and he also said that Maxwell was being treated with Ansaid. In the second report Dr. Chen concluded that Maxwell's abilities to lift, carry, stand, walk and sit were all impacted by his condition, but the doctor did not specify the extent to which Maxwell was limited in those respects. Dr. Chen found that Maxwell could climb, balance, stoop, crouch, kneel, crawl, reach, operate foot controls and perform fine and gross manipulations for less than ⅓ of an 8–hour day. Although Maxwell's ability to reach and handle was affected, Dr. Chen

---

**3.** [Footnote by this Court] "Pertaining to the inguen, or groin" (*Dorland's Illustrated Medical Dictionary* ["*Dorland's*"] 837 (27th ed. 1988)).

said that Maxwell's ability to feel, see, hear and speak was unaffected.

Two other consultative physicians, both of whose areas of specialization (if any) are not indicated in the record, also assessed Maxwell's residual functional capacity based solely on the evidence in his file and not on any personal examination. Those added opinions were by Drs. William Conroy and William Curtis.

Dr. Conroy prepared his report (R. 115–23) on February 9, 1990, when only Dr. Rana's report had been submitted. Dr. Conroy concluded that Maxwell could lift or carry 50 pounds occasionally (for up to 1/3 of an 8–hour day) and 25 pounds frequently (for up to 2/3 of an 8–hour day), and that he could stand, walk or sit for about 6 hours each during an 8–hour day. Dr. Conroy also concluded that Maxwell could climb, balance, stoop, kneel, crouch and crawl for up to 2/3 of an 8–hour day. Dr. Conroy found that Maxwell's ability to push and pull were unaffected and that he had no manipulative, visual, communicative or environmental limitations.

Dr. Curtis completed his assessment (R. 129–35) on March 27, 1990, after Dr. Chen's first report was in Maxwell's file. Dr. Curtis' conclusions were identical to those of Dr. Conroy, except for his finding that Maxwell's ability to climb, balance, stoop, kneel, crouch, and crawl were all unaffected. Commenting on Dr. Chen's findings, Dr. Conroy wrote (R. 135):

> Objective findings do not support marked limitations in ROM [range of motion] and the need of a cane for ambulation as stated by AP [attending physician].

On November 13, 1990 [4] Maxwell underwent a CT scan of his lumbar spine, which showed these conditions (R. 157) [5]:

> There is mild diffuse bulging disc at L3–L4. There is also severe diffuse bulging disc at L4–L5, resulting in extrinsic pres-

sure upon the dural sac. There is also moderate diffuse bulging disc at L5–S1. There is mild facette joint arthritis bilaterally ... There are also sclerotic [6] changes of the body of L4 on the right.

Finally, on February 14, 1991 Maxwell was examined by Dr. Sheldon Levine, a doctor of osteopathy who was apparently retained by Maxwell's attorney. Dr. Levine made these observations at R. 163 in his April 8, 1991 report (R. 161–64):

> The patient is right handed and the hand grip is good. The patient had no difficulty in using his hands to hold, grasp or manipulate objects.... The range of motion of all joints were within normal limits except for the lumbar spine which was decreased. No calf tenderness was present.... The deep tendon reflexes were bilaterally equal. There was decreased superficial reflexes of the right lower extremity. There was no localized atrophy or wasting of muscles.... There was a positive straight leg raising on the right side.

Dr. Levine also alluded to the already noted November 12 CT scan results as well as to a March 7, 1991 MRI—the results of which are not otherwise in the record—that "revealed bulging of L3–L4, L4–L5 and L5–S1 with possible herniation of L5–S1" (R. 163). He found that those test results were "compatible with clinical examination" (id.). Dr. Levine's clinical impressions were (R. 164):

1. Bulging disc L3–L4
2. Bulging disc L4–L5
3. Herniated disc L5–S1

*Statutory and Regulatory Framework*

Section 423(d)(1)(A) defines disability as: inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental im-

---

**4.** As will be discussed below, the evidence obtained from this point on was submitted after the Administrative Law Judge ("ALJ") had written his decision, but before the Appeals Council denied Maxwell's request for review.

**5.** Those findings reflect the evaluation by Dr. Gholam–Reza Hazarian, a radiologist. There is

also an unexplained reference to Dr. Henry Moss on the report.

**6.** [Footnote by this Court] "Sclerotic" refers to hardening, "especially hardening of a part from inflammation and in diseases of the interstitial substance" (*Dorland's* at 1496).

pairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months....

In determining whether claimants are disabled, Secretary engages in a five-step sequential inquiry, which was recently summarized in *Young v. Secretary,* 957 F.2d 386, 389 (7th Cir.1992) (case citations omitted):

1) [I]s the claimant presently unemployed; 2) is the claimant's impairment or combination of impairments severe; 3) does the impairment meet or exceed any of the list of specific impairments (the grid) that the Secretary acknowledges to be so severe as to preclude substantial gainful activity; 4) if the impairment has not been listed by the Secretary as conclusively disabling, is the claimant unable to perform his or her former occupation; and 5) if the claimant cannot perform the past occupation, is the claimant unable to perform other work in the national economy in light of his or her age, education and work experience. A negative conclusion at any step (except for step three) precludes a finding of disability. An affirmative answer at steps one, two or four leads to the next step. An affirmative answer at steps three or five results in a finding of disability. 20 C.F.R. § 404.1520 (1991).

If the assessment of an individual reaches step five, the rules in the Medical Vocational Guidelines of Reg. Part 404, Subpart P, Appendix 2 (cited "App. § —" and containing the "Grid" in App. §§ 201–203) come into play. Those Grid rules reflect an analysis of the vocational factors of age, education and work experience (Reg. §§ 404.1563–.1565) in combination with the claimant's residual functional capacity ("RFC"). RFC is defined by Secretary as (*Marcus v. Sullivan,* 926 F.2d 604, 608 (7th Cir.1991), quoting Social Security Ruling ["SSR"] 83–10):

[a] medical assessment of what an individual can do in a work setting in spite of the functional limitations and environmental restrictions imposed by all of his or her medically determinable impairment(s).

RFC is expressed in terms of a claimant's maximum sustained work capability for either "sedentary," "light," "medium," "heavy" or "very heavy" work as those terms are defined in Reg. § 404.1567.

Where an ALJ's findings of fact as to the vocational factors and RFC coincide with all the criteria of a particular Grid rule, the rule directs a conclusion of "disabled" or "not disabled." Because the Grid takes into account the number of unskilled jobs in the national economy at the various functional levels (Reg. § 404.1566), the existence of such jobs is established when the findings of fact coincide with the criteria of a rule (App. § 200.00(b)). However, nonexertional limitations (such as pain, inability to grasp objects or bimanual dexterity) are not reflected in Grid determinations. Hence App. § 200.00(e)(2) says:

However, where an individual has an impairment or combination of impairments resulting in both strength limitations and nonexertional limitations, the rules in this subpart are considered in determining first whether a finding of disabled may be possible based on the strength limitations alone and, if not, the rule(s) reflecting the individual's maximum residual strength capabilities, age, education, and work experience provide a framework for consideration of how much the individual's work capability is further diminished in terms of any types of jobs that would be contraindicated by the nonexertional limitations. Also, in these combinations of nonexertional and exertional limitations which cannot be wholly determined under the rules in this appendix 2, full consideration must be given to all of the relevant facts in the case in accordance with the definitions and discussions of each factor in the appropriate sections of the regulations, which will provide insight into the adjudicative weight to be accorded each factor.

### Procedural History and Administrative Findings

Maxwell applied for SSI and disability insurance benefits on January 17, 1990, claiming that he had been disabled since February 15, 1989 due to arthritis, numb-

ness in his right leg, a "bad back," a hernia and "blurry sight" (R. 67). His applications were denied both initially and upon reconsideration, after a determination in each instance that Maxwell could return to his past occupation (R. 73–78, 83–86).

Maxwell then requested and received a de novo hearing, which was held before ALJ Lovert Bassett on October 2, 1990. ALJ Bassett denied Maxwell's application on October 31, 1990, finding (R. 17–18):

1. The claimant met the disability insured status requirements of the Act on February 15, 1989, the date the claimant stated he became unable to work, and continues to meet them through December 31, 1993.

2. The claimant has not engaged in substantial gainful activity since February 15, 1989.

3. The medical evidence establishes that the claimant has severe arthritis and a right inguinal hernia, but that he does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4.

4. In evaluating the claimant's complaints of pain and functional limitations, to the extent alleged, the Administrative Law Judge finds them to be not credible pursuant to the guidelines of Social Security Ruling 88–13. The claimant does not have a medically determinable impairment which could reasonably be expected to support his pain symptoms. Additionally, his demeanor was not convincing.

5. The claimant has the residual functional capacity to perform work-related activities except for work involving lifting in excess of 50 pounds (20 CFR 404.-1545 and 416.945).

6. The claimant's past relevant work as a cashier I as it is generally performed in the national economy did not require the performance of work-related activities precluded by the above limitation(s) (20 CFR 404.1565 and 416.965).

7. The claimant's impairments do not prevent him from performing his past relevant work, as it is generally done in the national economy.

8. In the alternative, considering the claimant's medium residual functional capacity, young age, high school education, and unskilled work experience, section 404.1569 of Regulations No. 4 and section 416.969 of Regulations No. 16, and Rule 203.28, Appendix 2, Subpart P, Regulations No. 4 direct that the claimant be found "not disabled."

To restate those findings in terms of Secretary's five-step inquiry, ALJ Bassett found that (1) Maxwell is not gainfully employed and (2) has a severe impairment ("severe arthritis and a right inguinal hernia") but that (3) the impairment does not meet one of the listings. Thus the ALJ's disqualifying decision came at the fourth step of the process, when he determined that Maxwell's impairments did not prevent him from returning to his past work as a cashier. In the alternative, the ALJ also concluded at step five of the process that Maxwell was not disabled. That latter determination was based on the ALJ's finding that Maxwell had the RFC to perform medium work, which in combination with his vocationally relevant factors directed a conclusion that he was not disabled under App. § 203.28.

Following the ALJ's decision, Maxwell requested review by the Appeals Council. In addition to the evidence that had been considered by the ALJ, the Appeals Council received the November 12, 1990 CT scan report and Dr. Levine's April 8, 1991 report (R. 5). On June 5, 1991 the Appeals Council denied Maxwell's request for review, after determining that "[t]he additional evidence does not establish any significant deterioration in your condition or further restriction in your functional abilities" (R. 4). ALJ Bassett's decision thus became Secretary's final decision.

### Standard of Review

Section 405(g) empowers this Court to affirm, modify or reverse Secretary's decision, with or without remand for rehearing. Section 405(g) also provides, however, that "the findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive." As taught by many

cases, of which *Meredith v. Bowen*, 833 F.2d 650, 653 (7th Cir.1987) (citation omitted) is typical:

[A]fter review we must accept the findings of the ALJ if supported by substantial evidence. In so doing, we may not decide the facts anew, reweigh the evidence, or substitute our own judgment for that of the ALJ.

"Substantial evidence" means (*Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971), quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)):

more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

"Substantial evidence may be something less than the greater weight or preponderance of the evidence" (*Young*, 957 F.2d at 389), and a finding may be supported by substantial evidence even if a reviewing court might have reached a different conclusion on its own (*Delgado v. Bowen*, 782 F.2d 79, 83 (7th Cir.1986) (per curiam)).

This Court is called upon to decide two separate questions according to that standard:

1. whether the ALJ's determination that Maxwell could either return to his past occupation or perform medium work was supported by substantial evidence, and

2. whether the Appeals Council's determination that Maxwell's additional evidence was not material was supported by substantial evidence.

While a negative answer to either question would compel the rejection of Secretary's decision, both questions must nonetheless be addressed to determine whether reversal or remand is the appropriate outcome. This opinion now looks to that task.

7. ALJ Bassett's finding that Maxwell's arthritis is severe is actually supported only by the report of Dr. Chen. Dr. Rana noted only a history of polyarthritis, and the January 30 x-ray showed

### ALJ's Decision

Maxwell does not contest the ALJ's findings at the first three steps of the analysis. Whether or not Maxwell has an impairment is therefore not in issue here. ALJ Bassett's finding that Maxwell has "severe arthritis and a right inguinal hernia" is consistent with the reports of both examining physicians and with the January 30, 1990 x-ray.[7] What Maxwell does object to are the ALJ's determinations at steps four and five, which he contends are not supported by substantial evidence. Specifically Maxwell charges that the ALJ's decision is flawed in two respects:

1. as having improperly given more weight to the opinion of Dr. Rana than to the opinion of treating physician Dr. Chen, and

2. as having violated SSR 88–13 in the ALJ's assessment of Maxwell's subjective testimony.

Of course the ALJ's decision must be evaluated based only on the evidence that was before him at the time of his decision.

### ALJ's Evaluation of Medical Evidence

■ Maxwell's argument that ALJ Bassett wrongfully gave more weight to the opinion of consulting physician Dr. Rana than to that of Dr. Chen cannot prevail here. To see why, it is useful first to examine the sometimes mixed signals that come from our Court of Appeals on that general proposition, then to look at the particulars of the conflicting medical opinions here.

■ As for the first point, it is true that such cases as *Whitney v. Schweiker*, 695 F.2d 784, 789 (7th Cir.1982) articulate a general preference for the opinion of treating physicians. But they surely do not express an absolute rule. Instead the treating physician's presumably greater familiarity with the claimant's condition is only one factor that the ALJ needs to consider in weighing contradictory medical opinions, and it is not always controlling

only mild arthritic changes. But the Chen report suffices for purposes of upholding the ALJ's holding in that respect.

(*Walker v. Bowen*, 834 F.2d 635, 644 (7th Cir.1987)). If the consultant is a specialist, for example, his expertise and familiarity with like cases might sometimes outweigh the treating physician's familiarity with the claimant's condition (*Stephens v. Heckler*, 766 F.2d 284, 289 (7th Cir.1985), one of the decisions that tends away from any treating-physician preference).

As for the second factor, even the decisions that express a general preference for a treating physician's opinion do not consider such an opinion as entitled to more weight if it is not credible (*Whitney*, 695 F.2d at 789). Indeed, any physician's opinion must be accorded weight only to the extent that it is "supported by medically acceptable clinical and laboratory diagnostic techniques" (*id.*, quoting Reg. § 404.-1526; see also *Arbogast v. Bowen*, 860 F.2d 1400, 1405 (7th Cir.1988)). Here ALJ Bassett determined that Dr. Chen's reports were not credible because they were not supported by objective medical evidence (R. 16):

> I note that [Dr. Chen's second report] diagnosed arthritis and yet described no structural changes, found no clinical abnormalities, or listed any lab data.

In addition the ALJ observed that the only test results that Dr. Chen did provide, range of motion and straight leg raising tests, are both subjective tests that rely on the claimant's own statements regarding limitation (R. 16).[8] By contrast Dr. Rana's report was accompanied by both laboratory and x-ray results. ALJ Bassett also referred to the "irregularities and vagueness" of Dr. Chen's report (R. 14) and contrasted it with the "straightforward, articulate and complete" opinion of Dr. Rana (R. 16). In sum, the ALJ's determination that Dr. Rana's report was more credible and was due more weight is certainly supported by substantial evidence.

But even if that were not the case, Maxwell's challenge to the ALJ's preference for Dr. Rana's report would ultimately be irrelevant anyway. That is so because even Dr. Chen's reports do not conflict with the ALJ's step five finding that Maxwell could perform medium work and he was therefore not disabled under App. § 203.28. Reg. § 404.1567(c) defines that level of work:

> Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work.

As pointed out in the "Medical Evidence" section of this opinion, while Dr. Chen said that Maxwell's ability to lift, carry, walk, stand and sit are all affected by his impairment, he gave no indication of the extent to which Maxwell is limited in those respects. Nothing in his reports therefore contradicts the ALJ's determination that Maxwell could perform medium work.

On that subject the only specific opinions in the record are those of the two non-examining consultants. Both Dr. Conroy and Dr. Curtis concluded that Maxwell could lift up to 25 pounds frequently and up to 50 pounds occasionally, consistent with the demands of medium work. Even if the opinion of a non-examining physician were generally deemed to be accorded less weight than that of a treating physician (*Whitney*, 695 F.2d at 789),[9] the opinions of the non-examining physicians in this case were not contradicted by any medical evidence and were therefore properly considered (*Steward v. Bowen*, 858 F.2d 1295, 1298–99 (7th Cir.1988)).[10]

*ALJ's Assessment of Maxwell's Testimony*

Maxwell's own testimony as to the extent of his pain and functional limitation unquestionably conflicts with the

---

8. Soc. Sec. LP § 42:37 (Clark–Boardman–Callaghan, 1987) discusses the partial subjectivity of range of motion tests. That discussion appears wholly consistent with the ALJ's statement that "joint motion and leg raising test results ... must depend on the honesty of the patient and the accuracy of the physician" (R. 16).

9. As suggested earlier, there are opinions (such as *Stephens*) from other panels of our Court of Appeals that lean the other way.

10. Even the ALJ's step four determination is only partially contradicted by Dr. Chen's report (see Appendix).

ALJ's determination.[11] On that score Maxwell argues that ALJ Bassett wrongfully discounted his subjective complaints in violation of SSR 88–13. As Maxwell points out, SSR 88–13 sets out a framework for evaluating such cases:

> There are situations in which an individual's alleged or reported symptoms, such as pain, suggest the possibility of a greater restriction of the individual's ability to function than can be demonstrated by objective medical evidence alone.

But SSR 88–13 does not, as Maxwell seems to suggest, establish a basis for finding disability in cases where the individual's complaints are not supported by objective medical evidence. Instead the ruling expressly states:

> Pain cannot be found to have a significant effect on a disability determination or decision unless medical signs or laboratory findings show that a medically determinable physical or mental impairment is present that could reasonably be expected to produce the pain alleged.

Our Court of Appeals has held in *Howell v. Sullivan,* 950 F.2d 343, 348 (7th Cir. 1991) that SSR 88–13 is consistent with Seventh Circuit law as to the evaluation of subjective complaints. *Veal v. Bowen,* 833 F.2d 693, 698 (7th Cir.1987) (emphasis in original) expands on that idea:

> Despite a paucity of objective medical evidence directly supporting a disability, the claimant may prove that she is "disabled" within the SSA by subjective complaints if she shows: 1) evidence of an objectively adduced abnormality *and, either* 2) objective medical evidence supporting the subjective complaints issuing from that abnormality, *or* 3) that the abnormality is of a nature in which it is reasonable to conclude that the subjective complaints are a result of that condition.

Thus a claimant is not entitled to benefits "if the objective medical evidence failed to show a medical condition that would reasonably be expected to cause [his] symptoms" (*Moothart v. Bowen,* 934 F.2d 114, 117 (7th Cir.1991); see also *Walker,* 834 F.2d at 641, citing Section 423(d)(5)(A); and see Reg. § 404.1529). Hence the SSR 88–13 discussion about evaluating pain that is not supported by objective evidence can be relevant only in the context of *Veal* alternative 3)—where the claimant has presented objective evidence of an abnormality that can reasonably be expected to produce the degree of pain alleged, but has not provided objective evidence suggesting that much pain.

ALJ Bassett found, however, that Maxwell "does not have a medically determinable impairment, which could reasonably be expected to support his alleged pain symptoms" (R. 14). He reasoned (R. 15):

> The claimant does not have a medically determinable impairment which could reasonably be expected to cause back pain and stiffness, and right leg numbness and weakness limiting his functional capacities to which he testified to [sic]. In order for an impairment to be considered medically determinable, it must be based not only on symptomology, but also clinical on [sic] signs and laboratory findings. In the instant case, the existence of only mild arthritic changes and scoliosis on x-ray findings establishes an impairmant [sic] too modest in nature to be reasonably expected to produce pain, weakness, stiffness, and numbness after sitting and standing for a few minues [sic], walking a couple of blocks, lifting only eight pounds with the left or anything with the right hand, or bending to 30 degrees. These limitations are glaringly unreasonable in light of the tame medically established abnormalities.

That finding is supported by substantial evidence. In objective terms the record includes the January 31, 1990 x-rays, which revealed "mild arthritic changes" in the right hand and "mild ... scoliosis" in the lumbar spine (R. 114), and the January 31

---

11. Vocational expert William Glenn Fischer, who testified at the ALJ hearing (see Appendix), said that if Maxwell's pain and functional limitation were as Maxwell described them, he would be unable to perform either his past job or any other sedentary work (R. 57–59). If that were so, the ALJ's findings at both steps four and five would be incorrect.

laboratory tests, which were normal (R. 113). And as for the evaluations by Drs. Chen and Rana, the discussion in the preceding section has shown that neither of them supports the degree of limitation that Maxwell alleges. Nor do they indicate the existence of an impairment that might reasonably be expected to produce that degree of limitation.

There are only two pieces of objective evidence that Maxwell points to in support of his subjective symptoms (P. Mem. 10)—the November 13, 1990 x-ray (R. 157) and the April 8, 1991 report of Dr. Levine (R. 161–64)—and because both of them postdated ALJ Bassett's decision, they are irrelevant to this phase of the analysis.[12] Consequently the dictates of SSR 88–13 as to the evaluation of subjective testimony not supported by objective evidence do not apply here, for neither of the *Veal* alternatives has been established. ALJ Bassett's finding that Maxwell's subjective complaints were not credible is therefore supported by substantial evidence and is consistent with both SSR 88–13 and Seventh Circuit law.

### *Appeals Council's Denial of Review*

Secretary's regulations identify conditions under which review by the Appeals Council is appropriate (Reg. § 404.970). Among those reasons is the submission of "new and material evidence" (Reg. § 404.-970(b)):

> If new and material evidence is submitted, the Appeals Council shall consid-

er the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision. The Appeals Council shall evaluate the entire record including the new and material evidence submitted if it relates to the period on or before the date of the administrative law judge hearing the decision. It will then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.

■ As taught by *Nelson v. Bowen*, 855 F.2d 503, 506 (7th Cir.1988), this Court is entitled to review an Appeals Council decision as to whether additional evidence is "new and material":

> The Appeals Council's determination that the additional evidence submitted by [a claimant] is not material is a legal determination and therefore subject to *de novo* review.[13]

In such a review this Court applies the same standard that it would use in determining materiality under Section 405(g), which empowers the court to remand to Secretary to consider new evidence that is material (*id.*).[14] Under that standard new evidence is material "if there is a 'reasonable possibility' that it would change the outcome" (*id.*, quoting *Godsey v. Bowen*, 832 F.2d 443, 444 (7th Cir.1987)).

■ However, as Reg. § 404.970(b) makes clear, the evidence must be material to the determination of the claimant's dis-

---

12. R. Mem. 4 also argues that Dr. Chen's range-of-motion tests provide the requisite objective evidence. But as already discussed, the ALJ discredited those tests due to their subjective nature. In addition, Dr. Chen himself did not conclude based on those results that Maxwell's limitations were as severe as Maxwell alleged.

13. [Footnote by this Court] As this Court's colleague Honorable Ann Williams has pointed out in *Beno v. Sullivan*, No. 91 C 544, 1992 WL 153632, at *6 n. 6, 1992 U.S.Dist. LEXIS 834, at *11 n. 6 (N.D.Ill. Jan. 23, 1992), *Nelson* is distinguishable from *Damato v. Sullivan*, 945 F.2d 982, 989 (7th Cir.1991), which said:

> Since the Appeals Council's denial of a request for review is not subject to judicial review and the applicable regulations do not require an explanation of the grounds for

rejection, we hold that the Appeals Council may deny review without articulating its reasoning.

As *Beno* explains in the footnote cited above: While the Appeals Council need not articulate its reasons for denying review, *Nelson* shows that in those cases where the Appeals Council adopts the decision of the Secretary with additional findings of its own [even if those findings come in the form of a denial of review], the court is obligated to review those findings as well.

14. While Section 405(g) also requires a showing that there is good cause for failure to incorporate the evidence into the record at a prior proceeding, that requirement does not apply to new evidence presented to the Appeals Council.

ability *before* the time of the ALJ's decision, so that it is not relevant if it instead reflects a change or deterioration in the claimant's condition between the time of the ALJ's decision and the time of the Appeals Council action. Thus the Appeals Council had to make two separate determinations as to the November 12, 1990 CT scan report and the April 8, 1991 report of Dr. Levine (which included information regarding a March 3, 1991 MRI exam):

    1. whether the new evidence shed light on the nature of Maxwell's condition before the ALJ's October 31, 1990 decision and, if it did,

    2. whether the results of the additional medical tests had a "reasonable possibility" of changing the ALJ's decision.

■ In this case it is more orderly to take the second question first. In that respect the Appeals Council's decision that the new evidence was not material would clearly not be based on substantial evidence if the first hurdle were overcome. When the Appeals Council acted, it had before it the results of two objective tests, both of which revealed abnormalities in Maxwell's spine ("bulging" discs resulting in "extrinsic pressure upon the dural sac" and "possible disc herniation"). ALJ Bassett's rejection of both Maxwell's subjective complaints and Dr. Chen's opinions rested on the absence of any supporting objective evidence. In addition, the same lack of objective support must be viewed as having impacted Dr. Conroy's and Dr. Curtis' assessments of Maxwell's RFC based solely on the paper record before them. Thus the new objective tests, depending on their medical significance, plainly created more than a "reasonable possibility" of supporting a different result.

Yet because Dr. Levine's report did not discuss the meaning of those test results in terms of Maxwell's pain or his RFC, the Appeals Council had no way of knowing their possible relevance. As Maxwell has pointed out, Social Security adjudicators may not themselves make medical determinations—may not "play doctor" (*Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990)). Instead they must rely on the testi-

mony of medical experts and the medical opinions of the Social Security Administration as reflected in its regulations (*id.* at 118–19). More specifically, such cases as *Bauzo v. Bowen*, 803 F.2d 917, 926 (7th Cir.1986) (citations omitted) teach (quoting the per curiam opinion in *Lugo v. Secretary*, 794 F.2d 14, 15 (1st Cir.1986)):

> Neither the Appeals Council nor this court is qualified to make [a] medical judgment about residual functional capacity based solely on bare medical findings as to [a] claimant's ... condition.

Without the benefit of expert input, then, the Appeals Council's determination that the test results were not material was inappropriate.

As for the first question—whether the new evidence does or does not reflect back on Maxwell's condition at the time of the ALJ's decision—the Appeals Council's statement that such evidence "does not establish any significant deterioration" seems to suggest an affirmative answer. But any such determination—either affirmative or negative—also appears to require expert input. To be sure, both tests were performed after the ALJ issued his opinion, but it is necessary to determine whether the condition that they show is likely to have developed suddenly or over an extended period of time.

In accordance with Secretary's duty to develop the record fully and fairly (*Howell*, 950 F.2d at 348; *Sears v. Bowen*, 840 F.2d 394, 402–03 (7th Cir.1988)), the Appeals Council should therefore have remanded the case to the ALJ for a dual determination: one as to whether the new evidence shed light on Maxwell's condition at the time of the ALJ's decision, and the other as to whether the new evidence supported Maxwell's subjective testimony about his pain and functional limitations. That requires a remand to Secretary so that both those determinations can be made.

### Conclusion

Neither party is entitled to a judgment as a matter of law. Because the ALJ's opinion was based on substantial evidence in terms of the record before him, an out-

right reversal is not appropriate. But because the Appeals Council's finding that the evidence submitted to it after the ALJ's decision was not material has not been shown to be supported by substantial evidence, Secretary's decision cannot stand. This case is remanded to Secretary for further proceedings consistent with this opinion.

#### APPENDIX

As n. 10 suggests, ALJ Bassett's step four conclusion would not necessarily be undercut by crediting the bulk of Dr. Chen's opinion. Although Maxwell's previous job, which required him to lift up to 75 pounds, is clearly beyond his capacity, an affirmative finding at step four requires only that a claimant can perform his or her past job as it is generally performed in the national economy (*Steward*, 858 F.2d at 1300). Dr. William Glenn Fischer, the vocational expert who testified at Maxwell's hearing, classified his former position as "Cashier I" (R. 52). Cashier I is DOT Code No. 211.362.010 in the *Selected Characteristics of Occupations Defined in the Dictionary of Occupational Titles* ("*Selected Characteristics*") 225 (U.S. Department of Labor 1981), a sedentary job as defined in Reg. § 404.1567:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

Given Dr. Chen's failure to identify the extent to which Maxwell's ability to lift, carry, stand, walk and sit are limited, Dr. Chen's report does not contradict a finding that Maxwell can do sedentary work, just as it does not contradict a finding that he can perform medium work. In addition, Dr. Fischer opined that a cashier generally would not be required to "be doing a whole lot of bending and stooping past 25 or 30 degrees," would not have to climb, balance, stoop, crouch, kneel or crawl more than occasionally and would generally have a "sit/stand option" (R. 54–55). None of those requirements exceeds Dr. Chen's assessment of Maxwell's functional capacity.

In fact the only possible conflict between Dr. Chen's assessment and the definition of the cashier's job relates to Maxwell's ability to use his hands and arms. *Selected Characteristics* at 225, 466 says that the job of Cashier I requires "reaching, handling, fingering and/or feeling," and Dr. Fischer added that something between fine and gross manipulation is required for that job (R. 55–57). To be sure, those requirements are at odds with Dr. Chen's September 23, 1990 physical capacities evaluation, which found that Maxwell's ability to reach and handle are affected and that he can perform fine and gross manipulations for only up to ⅓ of an 8–hour day. But in that respect the ALJ clearly seems justified in finding that Dr. Chen's opinion was not credible, for Dr. Chen made no mention of Maxwell's hands or arms in the September 23, 1990 medical report that accompanied his physical capacity assessment. That aspect of Dr. Chen's conclusions has no apparent medical basis.