**Kevin DONAHUE, Plaintiff,**

v.

**Donna E. SHALALA, Secretary of Health & Human Services, Defendant.**

**Civ. No. 2:92–850 (AHN).**

United States District Court, D. Connecticut.

March 21, 1994.

28

Sheldon A. Mossberg, Willimantic, CT, for plaintiff.

Alan M. Soloway, Deidre A. Martini, Asst. U.S. Atty., Bridgeport, CT, for defendant.

NEVAS, District Judge.

After review and absent objection, the Magistrate Judge's Recommended Ruling is approved, adopted & ratified. SO ORDERED.

*MAGISTRATE JUDGE'S OPINION*

THOMAS P. SMITH, United States Magistrate Judge.

This is an action brought under § 205(g) of the Social Security Act [hereinafter "the Act"], 42 U.S.C. § 405(g), to review a final determination of the Secretary of Health and Human Services [hereinafter "Secretary"] that denied plaintiff's application for Social Security benefits. Presently before the court are the parties' cross-motions for judgment. For the following reasons, the defendant's motion should be denied, the plaintiff's motion should be granted, and this matter should be remanded to the Secretary solely for the purposes of calculating and awarding benefits.

## I. FACTS & PRIOR PROCEEDINGS

Plaintiff was born on May 13, 1948. He attended secondary school, but he did not go further than the eighth grade. (Transcript of Record [hereinafter "Tr."] at 36). He did, however, obtain a G.E.D., and he attended Worcester State College in Massachusetts for a year. (Tr. at 36). Plaintiff has a varied work history, including experience as an electrician's apprentice, an automobile salesperson, and a census taker, but, for purposes of this claim, the Secretary concluded that plaintiff has no relevant past work. (Tr. at 15).

Plaintiff served in an infantry unit of the U.S. Marine Corps during the Vietnam War. While in the Marine Corps, he earned the rank of lance corporal. He was decorated with the National Defense Service Medal, the Vietnam Service Medal, the Good Conduct Medal, and was discharged honorably. (Plaintiff's Memorandum at 3). Plaintiff alleges that, as a result of his service in Vietnam, he began to experience nightmares, a concomitant loss of sleep, outbursts of anger, hyper vigilance, and other symptoms. (*Id.*). These symptoms allegedly reached a point in the late 1970's, when plaintiff became a virtual recluse, that they precluded him from engaging in any substantial gainful activity. In 1988, plaintiff was diagnosed as suffering from post traumatic stress disorder (PTSD), delayed. (*Id.*).

Plaintiff filed an application for disability benefits on August 15, 1990, asserting that he was disabled since December 1, 1980, due to heart murmur, gastrointestinal problems, tendinitis of both shoulders, PTSD, asthma, and arthritis. (Tr. at 96, 164). The application was denied at both the initial and reconsideration levels of review. (Tr. at 115–117, 134–136). Plaintiff appealed the decision denying benefits to an Administrative Law Judge [hereinafter "ALJ"], who held a hearing at which the plaintiff and his wife testified.

At the hearing the plaintiff testified about the horrifying experiences in Vietnam that gave rise to his subsequent mental impairment. He stated that he began to have nightmares, which became more frequent and bizarre around 1979. (Tr. at 64). The nightmares were so intense that he was unable to sleep for days at a time. (Tr. at 67–68). He also testified about his volatile temper and the trouble it had brought about. (Tr. at 40–41). When asked why he could not work, he answered "I don't get along with other people at all. I . . . hide at home all the time. . . . I'm afraid to go out a lot." (Tr. at 39).

Plaintiff's wife testified about plaintiff's difficulty sleeping, his reclusive behavior, and his problems with his temper. (Tr. at 82). She stated that when they married in 1979 plaintiff "had real problems." (Tr. at 80). She also testified that it was only in the last year, since plaintiff began receiving treatment, that she noticed any improvement. (Tr. at 81).

Although he conceded that, as of the date plaintiff was last insured—June 30, 1983—plaintiff had PTSD, the ALJ found that plaintiff was not disabled within the meaning of the Act on or before that date. The Appeals Council declined to review the ALJ's determination, and plaintiff sought review in this court.

## II. SCOPE OF REVIEW

In reviewing a denial of disability benefits, the court may not make a *de novo* determination of whether the plaintiff is disabled. 42 U.S.C. § 405(g); *Wagner v. Secretary of Health & Human Services*, 906 F.2d

856, 860 (2d Cir.1990). The function of the court is to ascertain whether the Secretary applied the correct legal principles in making the determination and whether the determination is supported by substantial evidence.[1] *Johnson v. Bowen,* 817 F.2d 983, 985 (2d Cir.1987). Absent legal error, this court may not set aside the decision of the Secretary if it is supported by substantial evidence. *Bluvband v. Heckler,* 730 F.2d 886, 891 (2d Cir.1984); *Berry v. Schweiker,* 675 F.2d 464, 467 (2d Cir.1982). Moreover, if supported by substantial evidence, the Secretary's finding will be sustained even where substantial evidence may support the plaintiff's position and despite that the reviewing court, had it heard the evidence *de novo,* might have found otherwise. *Rutherford v. Schweiker,* 685 F.2d 60, 62 (2d Cir.1982), *cert. denied,* 459 U.S. 1212, 103 S.Ct. 1207, 75 L.Ed.2d 447 (1983); *Rivera v. Harris,* 623 F.2d 212, 216 (2d Cir. 1980).

### III. STATUTORY & REGULATORY PROVISIONS

Title II of the Social Security Act provides for the payment of insurance benefits to persons who have contributed to the program and who suffer from a physical or mental disability. 42 U.S.C. § 423(a)(1)(D). In order to qualify for Title II benefits, a claimant must have been disabled within the meaning of the Act on or prior to the last date on which he was insured. There is no dispute that for the plaintiff this date is June 30, 1983. Thus, to receive benefits, plaintiff must establish that, on or before that date, he was unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1). The im-

pairment must be of such severity that the person

is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).

■ The burden of establishing disability rests with the plaintiff. *Aubeuf v. Schweiker,* 649 F.2d 107, 111 (2d Cir.1981). In order to determine disability, the facts that must be considered are "(1) objective medical facts; (2) diagnosis or medical opinions based on those facts; (3) subjective evidence of pain and disability testified to by claimant and other witnesses; and (4) the claimant's background, age, and experience." *Williams ex rel. Williams v. Bowen,* 859 F.2d 255, 259 (2d Cir.1988). *See also Mongeur v. Heckler,* 722 F.2d 1033, 1037 (2d Cir.1983). The standards for finding disability are "to be applied in light of the fact that 'the ... Act is a remedial statute, to be broadly construed and liberally applied.'" *Gold v. Secretary of Health, Educ. & Welfare,* 463 F.2d 38, 41 (2d Cir.1972) (quoting *Haberman v. Finch,* 418 F.2d 664, 667 (2d Cir.1969)).

■ The Secretary has established a five-step sequential evaluation process for determining whether a person is disabled. *See Bowen v. Yuckert,* 482 U.S. 137, 140–142, 107 S.Ct. 2287, 2290–2292, 96 L.Ed.2d 119 (1987). First, the Secretary considers if the claimant is presently working in substantial gainful activity. If not, the Secretary next considers if the claimant has a medically severe impairment.[2] If the severity requirement is met, the third inquiry is whether the impairment is listed in Appendix 1 of the regulations or is

---

1. Substantial evidence has been defined as " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Williams ex rel. Williams v. Bowen,* 859 F.2d 255, 258 (2d Cir.1988) (quoting *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971)). "It is more than a mere scintilla or a touch of proof here and there in the record." *Id.*

2. Disability will be denied if the medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on a claimant's ability to do work. *Bowen,* 482 U.S. at 154 n. 12, 107 S.Ct. at 2297–2298 n. 12.

equal to a listed impairment. *See* 20 C.F.R. Pt. 404, Subpt. P. App. 1 (1993). If so, disability is granted. If not, the fourth inquiry is to determine whether, despite the severe impairment, the claimant's residual functional capacity allows him or her to perform any past work. If a claimant demonstrates that no past work can be performed, the Secretary then has the burden of proving that the claimant "still retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy." *Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir.1986) (citing *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir.1982); *Parker v. Harris*, 626 F.2d 225, 231 (2d Cir.1980)).

## IV. DISCUSSION

■ Following the Secretary's five-step scheme, the ALJ found that the plaintiff had not engaged in substantial gainful activity, and that the plaintiff had a severe impairment, although not one listed or equal to one listed in the Regulations. The ALJ also found that the plaintiff had no past relevant work. The resolution of this case, therefore, depends upon the last step in the sequential evaluation, and the issue that must be determined is whether the Secretary carried the burden of proof with respect to the question of whether plaintiff retained the capacity to perform alternative work as of the date he was last insured.

The ALJ found that plaintiff was not disabled as of his date last insured. He con-

cluded that plaintiff was capable of engaging in substantial gainful activity, although plaintiff "probably had some degree of limitation dealing with others such that he would have been limited to employment not requiring close dealings with other people." (Tr. at 17). Plaintiff claims the ALJ's findings are not based on substantial evidence, and that the ALJ applied erroneous legal standards in resolving plaintiff's claim. Because the court agrees with each assertion, the final decision of the Secretary cannot stand.

■ It is clear from an examination of the entire record that the ALJ misapprehended the law in evaluating plaintiff's claim. The comments and observations that the ALJ made during the hearing reveal that the ALJ erroneously believed that he could not find the plaintiff disabled unless there was a clear and unambiguous statement by a physician that described the plaintiff as "disabled" prior to the date last insured.[3] To be sure, such a statement may well provide the basis for a finding of disability;[4] but its absence from the record is not sufficient reason for denying a claim where, as here, the evidence as a whole amply established that plaintiff was disabled within the meaning of the Act before the expiration of his Title II insured status.[5]

In this case, contrary to the opinion of the ALJ, there was strong evidence establishing both the nature and degree of plaintiff's impairment during the relevant period of time. With respect to the nature of plaintiff's im-

---

**3.** At several points during the course of the hearing the ALJ remarked upon the absence of a time-relevant medical opinion of disability. (Tr. at 87–88, 89, 92, 93). For example, at one point, the ALJ suggested: "why don't you send this guy down to your favorite psychiatrist, have him examined, get me an opinion saying, what do we think of this guy back in '79 or '80." (Tr. at 88).

**4.** 20 C.F.R. § 1527 (1993). *See Schisler v. Sullivan*, 3 F.3d 563 (2d Cir.1993) (upholding Secretary's regulations supplanting Second Circuit's treating physician rule).

**5.** The ALJ's understanding of the law would result in a particularly hard burden for a claimant to meet in cases alleging a mental impairment similar to plaintiff's. According to plaintiff, the condition itself prevented him from seeking treatment during the relevant time period:

Q. Well, one of the questions that comes up ... was why the heck did you wait so long to get treatment?
A. Because I didn't want to be committed and I didn't want somebody to think I was nuts. (Tr. at 69–70). This aspect of plaintiff's condition was confirmed by Dr. Liepman, one of plaintiff's treating psychiatrists. (Tr. at 259). Thus, contemporaneous observation by competent professionals is lacking, and a retrospective opinion as to the degree of the impairment would seem to be necessarily speculative. Once plaintiff did seek treatment, he was diagnosed as suffering from PTSD. To put a burden on the plaintiff to come forward with a retrospective diagnosis of extent of disability, rather than a retrospective diagnosis of a medical condition, would be unfair. As will be discussed, however, plaintiff met even this stringent, unnecessary burden.

pairment, there are numerous reports in the record that corroborate plaintiff's claim that he suffered from PTSD during the relevant time period.[6] It is not necessary, however, to examine them in detail because the ALJ found that, as of the date last insured, "claimant had a post-traumatic stress disorder and a neurotic character disorder." (Tr. at 17). Thus, it was only the alleged degree of plaintiff's impairment that the ALJ found questionable.[7]

It is the Secretary's function to appraise the credibility of witnesses, including the plaintiff, *Carroll v. Secretary of Health & Human Services*, 705 F.2d 638, 642 (2d Cir. 1983), and, where the correct legal standard is applied, the court must defer to the credibility determination of the ALJ, who had the opportunity to observe the demeanor of the witness. "The ALJ has discretion to evaluate the credibility of a claimant and to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the [disability alleged] by the claimant." *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir.1979).

In this case, the ALJ based his determination of credibility on the "objective and other evidence." (*See* Tr. at 18).[8] To the extent the ALJ equated "objective evidence" with "medical evidence," he erred as a matter of law. Moreover, the time-relevant medical evidence before the ALJ, although sparse,

does not support the inferences drawn by the ALJ. For instance, Dr. Liepman's first letter states:

> [Plaintiff] suffers from a chronic anxiety disorder ([PTSD]) which first became apparent in 1966–67.... [U]pon his return to the U.S., he was able to function to some degree until 1976–77 when he began to become reclusive.... [His symptoms have] resulted in marked difficulties in maintaining social function and repeated episodes of decompensation in work settings in which he withdrew from the situation. Altogether, I believe [t]his has impaired [his] functions to an extent that he cannot reasonably support himself and his family.

(Tr. at 253). The ALJ understood Dr. Liepman's opinion as a

> mere[] state[ment] that the claimant suffered from a chronic anxiety disorder which first became apparent in 1966 to 1966, and was able to function to some degree until 1976 to 1977, which [sic] he began to become reclusive. Dr. Liepman does not indicate that the claimant's condition was of disabling severity at the time of his date last insured on June 30, 1983.

(Tr. at 16). The ALJ's understanding of Dr. Liepman's assessment is inherently illogical. The ALJ took Dr. Liepman's assessment to mean that plaintiff could "function to some

---

**6.** For example, plaintiff was treated at the Massachusetts Rehabilitation Commission from 1981 to 1983. His Rehabilitation counselor, Ms. Carolyn Langevin, stated:

> Although I do not recall the exact diagnosis ... I am certain it was of a psychiatric/characterological nature. I recall that he was a Vietnam veteran with many problems related to this as well as to his premorbid characterological defects.

(Tr. at 231). Dr. Malcom Sills, a psychiatrist to whom plaintiff was referred by Ms. Langevin, stated in a report dated July 1, 1981, that plaintiff "drifted from job to job" since his discharge fourteen years earlier. Dr. Sills noted plaintiff's problems with his uncontrollable temper and his trouble sleeping. He diagnosed plaintiff with neurotic character disorder and concluded that plaintiff was not "a good candidate for vocational guidance or training at this time as he must hold on to his independent image and would rebel against the student or trainee roll [sic]." (Tr. at 250).

Other reports include those of Dr. Alan Sooho, dated September 8, 1990 (Tr. at 214–16) and January 29, 1991 (Tr. at 227–230); letters from Dr. Michael Liepman dated September 25, 1991 (Tr. at 252–53) and January 22, 1992 (Tr. at 259); and even the consultative examination by Dr. Yunus Pothiawala (Tr. at 217–19).

**7.** In Finding 3, the ALJ states that, as of the date last insured, "claimant had a post-traumatic stress disorder and a neurotic character disorder, but that he does [sic] not have a [listed] impairment or combination of [listed] impairments." (Tr. at 17). Finding 4, however, states that "claimant's subjective complaints of severe disabling physical and mental conditions ... are not credible or supported by the objective and other evidence." (Tr. at 18).

**8.** It should be noted that the ALJ failed to make a credibility determination with respect to Mrs. Donahue, the plaintiff's wife, whose testimony supported plaintiff's contention that his impairment was of a disabling severity in 1979.

degree until," which necessarily implies that, after the "until," plaintiff could no longer function. Instead, the ALJ concludes that there was no opinion with regard to the disabling severity of the condition. The Secretary presented absolutely no medical evidence that plaintiff's condition improved subsequent to the "until" date.[9] The only logical conclusion, therefore, is that plaintiff's condition continued.

Dr. Liepman's second letter buttresses this conclusion.[10] He states:

I find it hard to believe that the [Secretary] could believe that [plaintiff's] current level of dysfunction began suddenly. [PTSD] is chronic. While I did not know nor examine [plaintiff] prior to 30 June, 1983, I am convinced that his function was impaired then as well as now.

(Tr. at 259). Dr. Liepman then goes on to list the symptoms that plaintiff indisputably manifested during the relevant time period in order to support his conclusion. Dr. Liepman's letters, if not the first taken alone, certainly meet the speculation tolerance level of *Dousewicz v. Harris*, 646 F.2d 771 (2d Cir.1981).

This, however, does not end the inquiry. Although he apparently accepted the retrospective diagnosis of PTSD, the ALJ determined that the degree of plaintiff's impairment did not meet the statutory criteria. "While [retrospective] medical opinions are not conclusive, 'a circumstantial critique by non-physicians, however thorough or responsible, must be overwhelmingly compelling, in order to overcome a medical opinion.'" *Riv-*

*era v. Sullivan*, 923 F.2d 964, 968 (2d Cir. 1991) (quoting *Wagner v. Secretary of Health & Human Services*, 906 F.2d 856, 862 (2d Cir.1990)). Since it has already been determined that the ALJ's assessment of the medical evidence was internally inconsistent, illogical, and, hence, not based on substantial evidence, all that is left to the Secretary's "circumstantial critique," which can be equated to the credibility determination, is the "other evidence."

By "other evidence," the court assumes that the ALJ is referring to the record as a whole. This blanket justification will not suffice. As the finder of fact, the ALJ was free to accept or reject the testimony of the plaintiff, but a "finding that the witness was not credible must nevertheless be set forth with sufficient specificity to permit intelligible plenary review of the record." *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 260–61 (2d Cir.1988) (citing *Carroll v. Secretary of Health & Human Services*, 705 F.2d 638, 643 (2d Cir.1983)). On this record, intelligible review of the ALJ's credibility determination is impossible.[11]

The ALJ's critique of Dr. Liepman's retrospective opinion as to the extent of plaintiff's impairment is hardly thorough or responsible, and it is definitely not compelling. It therefore fails to meet the standards set forth in *Wagner, supra*, 906 F.2d at 862.

The Secretary must assess all of the evidence in light of the objective medical facts and diagnoses. *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 261 (2d Cir.1988). In

---

**9.** The ALJ cited plaintiff's marriage in 1979 and his statement to Dr. Sills that he hoped to open a used-car business as evidence that plaintiff "experienced improvement in his condition subsequent to 1977 and was able to function in society." (Tr. at 16). In *Dousewicz v. Harris*, 646 F.2d 771 (2d Cir.1981), the Second Circuit held that a presently treating physician's testimony that the claimant was "probably" disabled six years prior was controlling where not contradicted by specific medical evidence to the contrary. *See also McBrayer v. Secretary of Health & Human Services*, 712 F.2d 795 (2d Cir.1983). Since the ALJ's observations do not amount to medical evidence, they do not so establish an improvement.

**10.** On appeal, the Secretary takes issue with the presence in the record of the second letter from

Dr. Liepman because it was not before the ALJ. Since this letter explicitly was considered by the Appeals Council, *see* Tr. at 4–5, ignoring the presence of the letter in the record would be contrary to the statutory obligation of this court to examine "the evidence upon which the findings and decision complained of are based." 42 U.S.C. § 405(g).

**11.** The ALJ's failure to make a sufficiently detailed finding on the issue of credibility constitutes an independent basis on which the decision of the Secretary should be reversed. *See Williams*, 859 F.2d at 261 (holding failure to make credibility determination regarding critical testimony "fatally undermines the Secretary's argument that there is substantial evidence adequate to support [the] conclusion that the claimant is not under a disability").

**34**

this case, the testimony given by plaintiff and Mrs. Donahue is consistent with the objective medical evidence and the opinions of the experts. The failure of the Secretary to present any medical evidence in conjunction with the failure to make an intelligible determination of the credibility of the witnesses defeats the Secretary's contention that there is substantial evidence to support the ALJ's determination.

In a case such as this, where the Secretary failed to present any medical evidence in contravention to that presented by the plaintiff and where the evidence in the record established that plaintiff is entitled to benefits, the case should be reversed rather than remanded. *See Parker v. Harris,* 626 F.2d 225, 235 (2d Cir.1980) (holding reversal appropriate "when the record provides persuasive proof of disability and a remand for further evidentiary proceedings would serve no purpose").

### V. CONCLUSION

For the above-mentioned reasons, the ALJ erred in the determination of whether the plaintiff was disabled as of his date last insured. Accordingly, defendant's motion for judgment (filing # 11) should be **DENIED,** the plaintiff's motion (filing # 10) should be **GRANTED,** and an order should issue remanding this matter to the Secretary solely for the purposes of calculating and awarding benefits.

Either party may seek review of this report and recommendation as provided in 28 U.S.C. § 636(b) (written objections to recommended ruling must be filed within 10 days of service of same); Fed.R.Civ.P. 6(a), 6(e), & 72; and Rule 2 of the Local Rules for United States Magistrate Judges.