**Sunnary PRAK, Plaintiff,**

v.

**Shirley S. CHATER, Commissioner of Social Security,[1] Defendant.**

**No. 94 C 4856.**

United States District Court, N.D. Illinois, Eastern Division.

July 5, 1995.

---

1. Effective March 31, 1995, the Commissioner of Social Security assumed the function of the Secretary of Health and Human Services in social security cases. In accordance with Section 106(d) of P.L. No. 103–296, Shirley S. Chater, the Commissioner of Social Security, has been substituted for Donna Shalala, the Secretary of Health and Human Services, as the defendant in this case.

Daniel Robert Bourke, Law Office of Daniel Bourke, Chicago, IL, for plaintiff and Sunnary Prak, plaintiff pro se.

James John Kubik, U.S. Attorney's Office, Chicago, IL, for defendant.

## MEMORANDUM OPINION AND ORDER

BUCKLO, District Judge.

Plaintiff, Sunnary Prak ("Mr. Prak"), applied for Disability Insurance Benefits ("DIB") on May 14, 1992. His claim was denied initially and upon reconsideration by state agency personnel. On November 5, 1993, Administrative Law Judge ("ALJ") Maren Dougherty held a hearing on the mat-

ter and found that Mr. Prak was not disabled. The Appeals Council subsequently denied Mr. Prak's request for review. On August 10, 1994, Mr. Prak brought this action to seek judicial review of the final decision of the Commissioner of Social Security ("Commissioner") pursuant to 42 U.S.C. § 405(g). Both parties now move for summary judgment. For the reasons set forth herein, the Commissioner's motion is denied, Mr. Prak's motion is granted, and the matter is remanded for a new hearing consistent with this opinion.

### Background

Mr. Prak was born in Cambodia on November 15, 1941. Tr. 27.[2] He has a two-year college degree and specialized vocational training. Tr. 108. Since he immigrated to the United States in 1975, Mr. Prak has worked as a community organizer, insurance broker, office manager, program specialist, and reconciliation clerk. Tr. 106–07. He last worked on February 15, 1988, when he left his job as a community organizer because of his alleged physical and mental impairments. Tr. 109–10.

On July 27, 1987, Mr. Prak visited the Louis A. Weiss Memorial Hospital with complaints of chest pain, dizziness, and shortness of breath. Tr. 134. Upon admission, his blood pressure was very high. Tr. 137. Mr. Prak had recently been diagnosed with hypertension. Tr. 134, 137. On July 29, 1987, Mr. Prak complained that he still felt dizzy and nauseous and that he had been experiencing frequent episodes of night sweats over the past few years. Tr. 142.

On August 5, 1987, Mr. Prak visited Northwestern Memorial Hospital, once again complaining of chest pain, dizziness, and shortness of breath. Tr. 165. Upon discharge from the hospital two days later, Dr. Bouldin diagnosed Mr. Prak with hypertension and panic attacks and prescribed Tenormin, an anti-hypertension medication, and Xanax, an anti-anxiety medication. Tr. 169. On February 8, 1988, Dr. Winter of the Northwestern Memorial Hospital Institute of Psychiatry diagnosed Mr. Prak as suffering from hypertension and a panic disorder with

agoraphobia. Tr. 194, 195. His report characterized the severity of Mr. Prak's psychosocial stressors as "mild" and rated his highest level of adaptive functioning last year as "good." Tr. 195. Dr. Winter recommended supportive psychotherapy and prescribed Xanax. Tr. 194.

Dr. Ky of the Indochina Medical Clinic is Mr. Prak's regular physician. Tr. 61. Dr. Ky claims to have seen Mr. Prak on a monthly basis since 1989. Tr. 223. On May 13, 1992, Dr. Ky stated that Mr. Prak has chronic arterial hypertension and a tremor and "is not able to work from time to time." Tr. 229. On June 30, 1992, Dr. Ky reported that Mr. Prak's complaints and symptoms were of dizziness and that his mental status was normal. Tr. 223–24. His diagnosis at that time was arterial hypertension. Tr. 225. He prescribed Tenormin and Xanax and reported that Mr. Prak should refrain from engaging in heavy work. Tr. 225. On August 6, 1992, Dr. Ky was asked to clarify Mr. Prak's allegations of panic attacks in light of his previous report. Tr. 228. Dr. Ky responded that Mr. Prak had never complained to him of panic attacks and reiterated his belief that Mr. Prak's mental status was normal. Tr. 228.

On August 5, 1992, Dr. Patey conducted a residual physical functional capacity assessment and found that Mr. Prak is capable of performing a wide range of exertionally medium work. Tr. 239–40; *see* 20 C.F.R. § 404.1567(c). On December 1, 1992, Mr. Prak visited St. Francis Hospital complaining of headaches, dizziness, and high blood pressure. Tr. 260. The following day, a doctor at St. Francis Hospital reported that Mr. Prak's blood pressure and panic attacks were controlled by medication. Tr. 268.

On February 10, 1993, Dr. Rowe performed a consultative psychological exam at the request of Mr. Prak's attorney. Tr. 248. Dr. Rowe diagnosed moderately-severe panic attacks with moderate agoraphobia, post-traumatic stress disorder ("PTSD"), a depressive illness, and a personality disorder. Tr. 253. Dr. Rowe stated that Mr. Prak appeared to meet Listings §§ 12.04, 12.06,

---

**2.** References to the Certified Administrative Record are designated as "Tr."

and 12.08, which pertain to anxiety-related, mood, and personality disorders. Tr. 253. Dr. Rowe also conducted a residual functional capacity assessment of Mr. Prak. Tr. 308–15. Dr. Rowe rated Mr. Prak's degree of impairment in his ability to perform the requirements of work as moderate to extreme. Tr. 308–313. Dr. Rowe's conclusions were based on information provided by Mr. Prak.[3]

On February 21, 1994, Dr. Lewis performed a psychiatric evaluation at the request of Mr. Prak's attorney. Tr. 287. He diagnosed generalized anxiety disorder with panic attacks and delayed onset PTSD. Tr. 288. Dr. Lewis reported that Mr. Prak's condition met Listing § 12.06 requirements and rated his degree of functional limitation as moderate to marked. Tr. 300. Dr. Rowe's residual functional capacity assessment and Dr. Lewis' evaluation were first submitted to the Appeals Council and therefore played no part in the ALJ's decision.

## Discussion

### A. Standard of Review

■ The Social Security Act provides for limited judicial review of final decisions of the Commissioner. 42 U.S.C. § 405(g). This court's role is limited to determining whether the decision of the ALJ is supported by substantial evidence in the record. *Wolfe v. Shalala*, 997 F.2d 321, 322 (7th Cir.1993) (citations omitted); *Steward v. Bowen*, 858 F.2d 1295, 1297 (7th Cir.1988) (citation omitted). In making this determination, the district court may not "reevaluate the facts, reweigh the evidence, or substitute [its] own judgment for that of the [Commissioner]." *Luna v. Shalala*, 22 F.3d 687, 689 (7th Cir. 1994) (citation omitted). Rather, the court must affirm a decision supported by substantial evidence in the absence of an error of law. *Herr v. Sullivan*, 912 F.2d 178, 180 (7th Cir.1990) (citations omitted); *Edwards v. Sullivan*, 985 F.2d 334, 336–37 (7th Cir.1993).

### B. Sequential Evaluation

In order to qualify for DIB, a claimant must be disabled. *Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir.1993). The term "disability" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505. To satisfy this definition, an individual must have a severe impairment which makes him or her unable to perform his or her previous work or any other substantial gainful activity which exists in the national economy. 20 C.F.R. § 404.1505.

Social Security regulations require the factfinder to follow a five-step sequential inquiry to determine whether a claimant is disabled. 20 C.F.R. § 404.1520. The Seventh Circuit has summarized the test as follows:

The [Commissioner] must determine in sequence: (1) whether the claimant is currently employed; (2) whether she has a severe impairment; (3) whether her impairment meets or equals one listed by the [Commissioner]; (4) whether the claimant can perform her past work; and (5) whether the claimant is capable of performing any work in the national economy. Once the claimant has satisfied Steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her past work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job.

*Pope v. Shalala, supra*, 998 F.2d at 477–78 (citing *Schroeter v. Sullivan*, 977 F.2d 391,

---

**3.** Mr. Prak told Dr. Rowe that he has no responsibilities at home because he is not capable of doing any activities. Tr. 249. Accordingly, he spends a great deal of time watching television. *Id.* Mr. Prak also stated that he has felt depressed more often than not for several years and that his anxiety attacks have necessitated frequent emergency room visits. Tr. 249–251. Mr.

Prak also reported having nightmares about the Khmer Rouge, which he claimed killed one of his sisters, his in-laws, and his mother's immediate family in retribution for his previous employment at the U.S. Embassy in Cambodia. Tr. 249. He also indicated that he immigrated to the United States in 1975 to escape persecution from the Khmer Rouge. Tr. 248.

393 (7th Cir.1992); *Rhoderick v. Heckler,* 737 F.2d 714, 715 (7th Cir.1984)).

In this case, ALJ Dougherty applied the sequential evaluation and decided the case at step five. She found that Mr. Prak has not engaged in substantial gainful activity since February 15, 1988; that the medical evidence established that Mr. Prak has a severe history of panic attacks; and that Mr. Prak did not suffer from an impairment or combination of impairments listed in, or medically equal to one listed in the applicable regulations. Tr. 13. She also found that he is unable to perform his past relevant work as a community organizer, insurance broker, or office manager, but that he has the residual functional capacity to perform the nonexertional requirements of work, except for difficulties in working with complex job instructions, maintaining concentration, and interacting with others. *Id.* She found that he has no exertional limitations. *Id.* The ALJ concluded that Mr. Prak was not "disabled" within the meaning of the Act and the applicable regulations. Tr. 14.

### C. *Newly–Submitted Evidence*

■ Mr. Prak maintains that he is disabled due to a combination of severe mental impairments with physical symptoms which are sufficiently substantial to preclude his return to any gainful employment. In support of his position, Mr. Prak presents evidence which was first submitted to the Appeals Council, *i.e.*, Dr. Lewis' psychiatric evaluation and Dr. Rowe's residual functional capacity assessment.[4] In this case, the decision of the ALJ is the final decision of the Commissioner because the Appeals Council denied review of Mr. Prak's application for benefits. Accordingly, the ALJ's decision, not the Appeals Council's denial of review, is the decision subject to judicial review. Un-

der these circumstances, it is ordinarily improper for a court to consider new evidence not presented to the ALJ because "the correctness of that decision depends on the evidence that was before the [ALJ]." *Eads v. Secretary of the Dept. of Health and Human Services,* 983 F.2d 815, 817 (7th Cir.1993). *See also Diaz v. Chater,* 55 F.3d 300, 305 n. 1 (7th Cir.1995); *Luna v. Shalala, supra,* 22 F.3d at 689.

■ Mr. Prak argues that this court should review the new evidence because the Appeals Council erred in deciding that the evidence was not material to the disability determination. A court may conduct a limited review of new evidence where, as here, the claimant alleges that the Appeals Council's denial of review rests on a mistake of law. *See Diaz v. Chater, supra,* 55 F.3d at 305 n. 1; *Eads v. Secretary of the Dept. of Health and Human Services, supra,* 983 F.2d at 818; *Scivally v. Sullivan,* 966 F.2d 1070, 1075 (7th Cir.1992); *Nelson v. Bowen,* 855 F.2d 503, 505, 506 (7th Cir.1988).[5] The Social Security regulations require the Appeals Council to consider "new and material evidence" under certain circumstances. *See* 20 C.F.R. § 404.970(b). New evidence is material "if there is a 'reasonable possibility' that it would change the outcome." *Nelson v. Bowen, supra,* 855 F.2d at 506 (citing *Godsey v. Bowen,* 832 F.2d 443, 444 (7th Cir.1987)).

In denying review of Mr. Prak's application, the Appeals Council noted that Dr. Ky's treatment notes indicated that Mr. Prak's blood pressure was well-controlled with medication and did not mention panic attacks. Tr. 3. The Appeals Council also discredited Dr. Rowe's residual functional capacity assessment on the ground that it was based on Mr. Prak's statements about depression and

4. Mr. Prak inadvertently neglected to submit the residual functional capacity assessment with Dr. Rowe's psychological evaluation, which was before the ALJ. Tr. 283. Mr. Prak also submitted Dr. Ky's treatment notes to the Appeals Council as evidence that he has been taking Xanax, a drug used to treat anxiety disorders, since 1987. Tr. 285.

5. In *Nelson,* for example, the Appeals Council refused to review a decision of the ALJ on the ground that the newly-submitted evidence was

not material to the claimant's disability determination. *Nelson v. Bowen, supra,* 855 F.2d at 505. The Seventh Circuit remanded the case to the Appeals Council for consideration of the additional evidence, explaining that the Appeals Council's decision regarding the materiality of the new evidence is a legal determination subject to *de novo* review and finding that the Council erred in deciding that the new evidence was not material to the disability determination. *Id.* at 505–08.

multiple emergency room visits which were not supported by objective evidence in the record. Tr. 4. I agree that these new submissions do not constitute "material" evidence, as defined in *Nelson v. Bowen, supra,* 855 F.2d at 506.

 However, I believe the Appeals Council erred in finding Dr. Lewis' psychiatric evaluation to be immaterial. The Council apparently rejected Dr. Lewis' psychiatric evaluation on the ground that it was not probative of Mr. Prak's mental condition on or before the date of the expiration of his insured status, *i.e.,* June 30, 1991. Tr. 3–4. However, the evaluation specifically addresses Mr. Prak's mental condition during the relevant time period. It explains Mr. Prak's medical history of panic attacks and PTSD symptoms dating back to 1987 and describes with specificity the difficulties Mr. Prak experienced when he last worked as a community organizer for Asian Human Services. Tr. 287. Dr. Lewis' recognition that Mr. Prak exhibited PTSD symptoms as early as 1987 leads me to believe that the evidence might have affected the ALJ's disability determination in light of her erroneous finding, discussed *infra,* that Mr. Prak was never diagnosed with PTSD. Tr. 11.

### D. *Decision of the ALJ*

Mr. Prak maintains that the ALJ also made several errors at step three of the sequential evaluation. A claimant is disabled at step three if he proves that his condition meets or equals an impairment listed in the applicable regulations. 20 C.F.R. § 404.1520(d). ALJ Dougherty found that Mr. Prak's condition did not meet or equal any of the listed impairments. Tr. 13.

### 1. *Medical Evidence*

 Mr. Prak insists that the medical evidence demonstrates that he meets the criteria of disability under 20 C.F.R., Pt. 404, Subpt. P, App. 1, §§ 12.04, 12.06, 12.08. He argues that the treating sources have provided extensive documentation of his disabling

conditions and emphasizes that the medical opinions of treating sources are entitled to special weight in determining whether an individual is disabled. *See, e.g., Whitney v. Schweiker,* 695 F.2d 784, 789 (7th Cir.1982); *Rodriguez v. Bowen,* 876 F.2d 759, 761–62 (9th Cir.1989); 20 C.F.R. § 404.1527(d)(2). Although he does not specify which sources he believes are entitled to special weight in this regard, Mr. Prak presumably relies on the opinions of Drs. Rowe and Lewis.

Drs. Rowe and Lewis, however, are not "treating sources" under the Social Security regulations.[6] Moreover, as explained above, I may not consider Dr. Lewis' report in evaluating the decision of the ALJ because the report was first submitted to the Appeals Council. Dr. Rowe, whose evaluation was before the ALJ, met with Mr. Prak on one occasion in February, 1993 to perform a consultative psychological evaluation in connection with Mr. Prak's hearing before the ALJ. Dr. Rowe diagnosed moderately-severe panic attacks with moderate agoraphobia, PTSD, a depressive illness, and a personality disorder, and concluded that Mr. Prak appeared to meet the requirements of Listings §§ 12.04, 12.06, and 12.08. Dr. Ky, on the other hand, has been seeing Mr. Prak on a monthly basis since 1989. Tr. 223. Dr. Ky reported that Mr. Prak had never complained about panic attacks and that his mental status was normal.

 An administrative law judge has broad discretion to make credibility determinations, and a reviewing court may not disturb these determinations as long as they find some support in the record and are not patently wrong. *Edwards v. Sullivan, supra,* 985 F.2d at 338 (citation omitted); *Herron v. Shalala,* 19 F.3d 329, 335 (7th Cir. 1994). In the present case, ALJ Dougherty could conclude that Dr. Rowe's evaluation, the product of a one-time consultation arranged in connection with the hearing, was not as credible as that of Dr. Ky, Mr. Prak's regular treating physician. *See* 20 C.F.R.

---

6. 20 C.F.R. § 404.1502 provides in part:
 We will not consider a physician or psychologist to be your treating physician if your relationship with the physician or psychologist is not based on your need for treatment, but solely on your need to obtain a report in support of your claim for disability. In such a case, we will consider the physician or psychologist to be a consulting physician or psychologist.

§ 404.1527(d)(2); *Carver v. Harris*, 634 F.2d 363, 364 (7th Cir.1980) (opinions of treating physician entitled to greater weight than "those of a doctor who examined plaintiff only once").

On the other hand, Dr. Ky is neither a psychologist nor a psychiatrist. Hence, evidence of a serious mental disorder may not have been apparent to him. *Cf.* 20 C.F.R. § 404.1527(d)(5) (opinion of a specialist is entitled to more weight than opinion of a non-specialist on medical issues relating to the area of specialty); *Maxwell v. Sullivan*, 792 F.Supp. 582, 590 (N.D.Ill.1992) ("[i]f the consultant is a specialist, . . . his expertise and familiarity with like cases might sometimes outweigh the treating physician's familiarity with the claimant's condition"). Moreover, the ALJ did not give any reason to discredit Dr. Rowe's evaluation. Nevertheless, as the Seventh Circuit has observed,

> Experience and knowledge of this case lie on the side of the treating physician, expertise and knowledge of similar cases on the side of the consulting specialist. How these weigh in a particular case is a question for the [ALJ] . . .

*Stephens v. Heckler*, 766 F.2d 284, 289 (7th Cir.1985).

### 2. *Factual Error*

■ Mr. Prak also argues that the ALJ committed a factual error which deprived him of a full and fair hearing of the evidence. Indeed, the ALJ erroneously found that Mr. Prak was never diagnosed with PTSD, stating:

> the claimant's representative attempted to argue the claimant has post traumatic stress disorder. However, this diagnosis was not made by Dr. Rowe, and has not been made by any other examining physician.

Tr. 11. To the contrary, Dr. Rowe specifically diagnosed Mr. Prak as suffering from PTSD. Tr. 253. Mr. Prak argues that this factual mistake resulted in an erroneous determination of his disability status. He adds that the error was compounded by the Appeals Council's refusal to remand on the basis of the new evidence, *i.e.*, Dr. Lewis' evaluation, which substantiated the PTSD diagno-

sis. The Commissioner responds that this mistake is harmless error and hence does not justify remand. She argues that the ALJ evaluated Mr. Prak's mental conditions under "the rubric of anxiety disorders—Listing § 12.06—which includes PTSD," and that therefore the ALJ considered any functional impact of PTSD by examining the impact of Mr. Prak's panic attacks.

■ Remand is appropriate only if there is reason to believe that a different result might ensue. *See Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir.1989) ("[n]o principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result") (citations omitted); *Walker v. Bowen*, 834 F.2d 635, 644 (7th Cir.1987). I am inclined to believe that a remand might lead to a different result in this case. First, the ALJ's statement rejecting the existence of a PTSD diagnosis implies that such a diagnosis might have affected her disability determination. Indeed, she apparently deemed Dr. Rowe to be a credible witness, as evidenced by the fact that she accepted his other findings in reaching her decision. Tr. 10–11. Moreover, in ignoring the PTSD diagnosis, the ALJ necessarily failed to assess the disabling severity of the PTSD and therefore could not have determined whether Mr. Prak's degree of impairment met the statutory criteria for disability. *See* 20 C.F.R. §§ 404.1520(a), 404.1523, 404.1526; *Donahue v. Shalala*, 851 F.Supp. 27 (D.Conn.1994). I am not persuaded by the Commissioner's argument that the ALJ considered any functional impact of PTSD even though she incorrectly believed that no PTSD diagnosis had been made. Remand is an appropriate remedy in this case.

### *Conclusion*

For the reasons stated herein, the Commissioner's motion for summary judgment is denied and Mr. Prak's motion for summary judgment is granted insofar as he seeks a remand. The matter is remanded for a new hearing consistent with this opinion.