Pamela·VADEBONCOEUR, Plaintiff,

v.

John J. CALLAHAN, Acting Commissioner of the Social Security Administration, Defendant.

No. 96 C 6244.

United States District Court,
N.D. Illinois,
Eastern Division.

Sept. 4, 1997.

Robert C. Kielian, M. Jacqueline Walther, Kielian & Walther, Chicago, IL, for Plaintiff.

Daniel Edward May, U.S. Atty. Office, Chicago, IL, for Defendant.

1. References are to the certified administrative record prepared by the Commissioner and filed

## MEMORANDUM OPINION AND ORDER

IAN H. LEVIN, United States Magistrate Judge.

Plaintiff, Pamela Vadeboncoeur, seeks judicial review pursuant to the Social Security Act, 42 U.S.C. § 405(g), of a final decision of the Commissioner of Social Security (the "Commissioner") denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Plaintiff moves for summary judgment pursuant to Fed.R.Civ.P. 56. In the alternative, Plaintiff moves that her case be remanded to the Commissioner for consideration of additional, new evidence. The Defendant has filed a brief in support of the Commissioner's decision, requesting affirmance of that decision and a denial of the motion for remand.

For the reasons set forth below, the Commissioner's decision is affirmed and the motion for remand denied.

## PROCEDURAL HISTORY

Plaintiff applied for DIB on April 11, 1994 and for SSI on March 15, 1994 (R. 34–41.) [1] Her applications, and timely request for reconsideration, were denied by the Commissioner of the Social Security Administration. (R. 42–50.) Upon Plaintiffs timely request (R. .51), a hearing was held—wherein Plaintiff was represented by an attorney—before Administrative Law Judge John L. Mondi (the "ALJ") on July 27, 1995. (R. 318.) The ALJ denied Plaintiff's applications on October 17, 1995 on the grounds that Plaintiff retained the ability to perform her past relevant work as a hand product assembler. (R. 18.) On July 24, 1996, the ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiffs request for review. (R. 4–5.) Pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), Plaintiff initiated this civil action for judicial review of the Commissioner's final decision.

## LEGAL STANDARDS

### I. STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is limited. The Social Security Act,

with this court pursuant to 42 U.S.C. § 405(g).

at 42 U.S.C. § 405(g), establishes that the Commissioner's findings as to any fact are conclusive if they are supported by substantial evidence. *See also Brewer v. Chater,* 103 F.3d 1384, 1390 (7th Cir.1997). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); *Brewer,* 103 F.3d at 1390. The court may not reevaluate the facts, reweigh the evidence, or substitute its own judgment for that of the Commissioner. *See Brewer,* 103 F.3d at 1390. Conclusions of law are not entitled to deference, however, so if the Commissioner commits an error of law, reversal is required without regard to the volume of evidence in support of the factual findings. *See Binion v. Chater,* 108 F.3d 780, 782 (7th Cir.1997).

## II. *STATUTORY AND REGULATORY FRAMEWORK*

To receive disability benefits, a SSI or DIB claimant must be "disabled" as defined by The Social Security Act. *See* 42 U.S.C. § 423(a)(1)(D); 42 U.S.C. § 1382(a); *Pope v. Shalala,* 998 F.2d 473, 477 (7th Cir.1993). An individual is "disabled" if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *See* 42 U.S.C. § 423(d)(1)(A);-:20 C.F.R. § 404.1505(a). *See also Jones v. Shalala,* 10 F.3d 522, 523–24 (7th Cir.1993). To satisfy this definition, an individual must have a severe impairment that renders her unable to do her previous work or any other substantial gainful activity that exists in the national economy. *See* 20 C.F.R. § 404.1505(a).

The Social Security regulations delineate a five-step process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520. The ALJ first considers whether the claimant is presently employed or "engaged in substantial gainful activity." 20 C.F.R. § 404.1520(b). If he or she is, the claimant is not disabled,

and the evaluation process is over; if he or she is not, the ALJ next addresses whether the claimant has a severe impairment or combination of impairments which "significantly limits ... physical or mental ability to do basic work activities." 20 C.F.R. 404.1520(c). Third, the ALJ determines whether that severe impairment meets any of the impairments listed in the regulations, 20 C.F.R. § 401, pt. 404, subpt. P, app. 1. If it does, then the impairment is acknowledged by the Commissioner to be conclusively disabling. *See, Brewer,* 103 F.3d at 1391.

If the impairment does not so limit the claimant's remaining capabilities, the fourth step is that the ALJ reviews the claimant's "residual functional capacity" ("RFC") and the physical and mental demands of her past work. RFC is a measure of what an individual can do despite the limitations imposed by her impairments. *See* 20 C.F.R. §§ 404.1545(a), 416.945(a). *See also* Social Security Ruling 96–8p (1996). If the claimant can perform her past relevant work, she will be found not disabled. *See* 20 C.F.R. § 404.1520(e).

For the fifth step, if the claimant shows that her impairment is so severe that she is unable to engage in her past relevant work, then the burden of proof shifts to the Commissioner to establish that the claimant—in light of her age, education, job experience and functional capacity to work—is capable of performing other work and that such work exists in the national economy. *See* 42 U.S.C. § 423(d)(2); 20 C.F.R. § 404.1520(f). *See also Brewer,* 103 F.3d at 1391.

### *THE ADMINISTRATIVE HEARING*

#### I. *PLAINTIFF'S TESTIMONY*

Plaintiff was born on December 7, 1953, and was 41 years old at the time of the ALJ's decision. (R. 322.) Plaintiff has a high school education and attended one year of college. (*Id.*) From 1980–86, Plaintiff worked as a clerk/cashier and assistant manager at a gas station. (R. 325–26.) That job involved lifting over 20 pounds, as well as bending and stretching. (R. 326.) Plaintiff then worked at Dove Bar International dipping ice cream bars and boxing the bars for

shipping. (R. 324–25.) The job at Dove Bar, which Plaintiff performed standing, did not require lifting anything over a few pounds. (R. 325.) Plaintiff worked at Dove Bar for three months. (R. 324.) From November 1986 until August 1991, Plaintiff worked as a spot welder for Athena Industries, a manufacturer of steel wire racks. (R. 323–24.) This job involved, among other things, heavy lifting. (R. 324.)

When asked regarding what prevented her from working, Plaintiff testified that she had a recurrent hernia which has undergone five repairs. (R. 326.) Plaintiff also testified that she has asthma. (R. 327.) Plaintiff testified that she gets dizzy due to a side effect caused from her medicine, Lozol. (R. 329.) Plaintiff stated that she has a problem with nervousness and depression because of the medicines she takes and suffers from migraine headaches. (R. 329–330.) Plaintiff claimed that she had memory and concentration problems, but was not sure if they should be characterized as major or minor. (R. 332.) Plaintiff further testified that she: (1) had no problem sitting (R. 327); (2) could stand at least 15 to 20 minutes without problems (id.); (3) could walk a half a block without problems (R. 328); (4) could not lift a gallon of milk (id.); and (5) could not bend very much (id.).

## II. MEDICAL EVIDENCE

Plaintiff submitted evidence regarding her abdominal problems. Although Plaintiff testified that she underwent five hernia operations, she only gave the ALJ medical records from two of those operations, December 1991 and January 1994. (R. 87–104, 139–47.) Plaintiff's January 1994 surgery required another hospital stay due to discharge from the surgical wound. (R. 164–68.) Plaintiff also submitted records regarding laparoscopic surgery she underwent in April 1992 which resulted in gallstones being removed. (R. 105–117.) In addition, records reflected that Plaintiff was treated in the emergency room for pain and discharge in her abdominal area in August 1992. (R. 123–27.)

Plaintiff submitted evidence regarding heart problems. For example, in May 1994, Plaintiff was hospitalized with an acute myo-cardial infarction. (R. 178, 180.) Cardiac catheterization studies revealed coronary artery disease. (R. 181, 209.) Plaintiff underwent coronary angioplasty and took medication. (R. 208–09.) An EKG stress test conducted in July 1994 was normal, with no ischemic symptoms or EKG changes. (R. 227, 292.) Plaintiff had normal blood pressure and heart rate, and her exercise capacity was only mildly reduced. (R. 227.) In May 1995, Dr. Chris Kolyvas reported that he had treated Plaintiff with medication for coronary artery disease. (R. 292.) He indicated that the stress thallium testing had revealed no evidence of ischemia and was essentially normal. (Id.)

In June 1994, Dr. Delano Zimmerman issued a residual functional capacity assessment which was reviewed and affirmed by Dr. Francis Vincent. (R. 257–64.) This report stated that Plaintiff could occasionally lift twenty pounds, frequently lift ten pounds, stand/walk about six hours in an eight-hour workday and sit about six hours in an eight-hour workday. (R. 258.) Dr. Zimmerman stated that Plaintiff would not need any manipulative or environmental limitations. (R. 261.)

In August 1995, Dr. Kasbekar, Plaintiff's treating physician, filled out a residual functional capacity questionnaire. (R. 287.) Dr. Kasbekar diagnosed Plaintiff with a large ventral incisional hernia and status coronary angioplasty and noted Plaintiff's complaints of abdominal pain and cramping and dizziness and drowsiness. (R. 287.) Dr. Kasbekar indicated that Plaintiff could walk one to two blocks at a time, sit thirty minutes. at a time, and stand ten minutes at a time; she could sit at least six hours during a normal eight-hour day, and could walk and stand two hours intermittently during an eight-hour work day. (R. 289.) Dr. Kasbekar specified that Plaintiff needed to shift positions at will and that she could perform no weight lifting. (R. 289, 290.) Dr. Kasbekar stated that Plaintiff "can't work because of coronary disease and hernia." (R. 290.)

## III. THE VOCATIONAL EXPERT'S TESTIMONY

An impartial vocational expert, Edward Pagella (the "VE"), testified at Plaintiff's

hearing. The VE testified that the skill and exertional levels of Plaintiff's prior employment were as follows: (1) Plaintiff's clerk/cashier job was unskilled, light work; (2) Plaintiff's production assembler job at Dove Bar was generally an unskilled sedentary job; and (3) Plaintiff's production welder job was semi-skilled, medium work. (R. 339.) The VE testified that a person of Plaintiff's age, education, medical condition and work history could perform sedentary work and could perform the job of production assembler in the national economy. (R. 339–342.)

The VE testified that if the ALJ credited Plaintiff's testimony regarding her limitations on walking, standing, lifting and drowsiness caused by medication, there would be no jobs that she could perform in the economy. (R. 340–41.) The VE also testified that if the ALJ did not credit Plaintiff's testimony that she suffered from drowsiness caused by the medications, Plaintiff could perform other work plentifully existing in the national economy, including work as a telephone marketing clerk, a charge account clerk, or a credit reference clerk. (R. 341–42.)

## IV. *THE ALJ'S FINDINGS AND DECISION*

The ALJ found that Plaintiff had not engaged in substantial gainful activity since August 1, 1991—the alleged onset of disability. (R. 14.) The ALJ found that Plaintiff had impairments which, although severe, did not meet or equal the requirements of any medical listings in the regulations at 20 C.F.R. Part 404, subpt. P, app. 1. (R. 15.) The ALJ described Plaintiff's impairments as "a history of a myocardial infarction with angioplasty, a history of hernia repairs, dia-

betes mellitus, hypertension, obesity and asthma." (R. 17.) Because the ALJ did not find that Plaintiff's impairments met or equaled a listed impairment, the ALJ assessed her RFC—what Plaintiff could do despite her limitations.

After reviewing the testimony presented at the hearing and Plaintiff's medical records, the ALJ concluded that Plaintiff was not disabled because she retained the residual functional capacity for at least sedentary work and she could perform her past relevant sedentary work as a product hand assembler. (R. 16–18.) The ALJ found that Plaintiff's past relevant work as a product hand assembler did not require the performance of work-related activities precluded by Plaintiff's limitations. (*Id.*) Because the ALJ found that Plaintiff could perform her past relevant work at step four of the sequential analysis, the ALJ did not consider step five of the sequential analysis, whether Plaintiff was capable of performing other work and whether such work existed in the national economy.

## ANALYSIS

### I. *THE PAST RELEVANT WORK ISSUE*

 Plaintiff's threshold argument is that the ALJ's finding that Plaintiff could perform her past relevant work as a product hand assembler is not supported by "substantial evidence." [2]

In order for a Plaintiff to show, at step four of the sequential analysis, that she is unable to perform her past relevant work, she is required to prove that she did not have the residual functional capacity to perform the functional demands and duties of her past job either: (1) as she actually performed

---

**2.** As an initial matter, Plaintiff contends that the ALJ erred in determining that her job at Dove Bar constituted "past relevant work" to use in a step four analysis. Plaintiff's argument is that her three month duration of employment there is insufficient to consider the work relevant.

The regulations define past relevant work as work that was performed within the last fifteen years, lasted long enough for the claimant to learn how to do the job and was substantial gainful activity. *See* 20 C.F.R. §§ 404.1565(a), 416.965(a). Here, Plaintiff's job at Dove Bar required dipping ice cream bars in chocolate and

packing them in a box. (R. 72, 324–25.) The VE described such work as unskilled (R. 339), which, according to the regulations, means that "a person can usually learn to do the job in 30 days, and little specific vocational preparation and judgment are needed." 20 C.F.R. §§ 404.1568(a), 416.968(a). Plaintiff has not provided any evidence—nor legal support—demonstrating that she was unable to learn the Dove Bar job in 30 days.

In sum, Plaintiff's challenge to the ALJ's determination on this point is not supportable.

the job, *or* (2) as was generally required by employers throughout the national economy. *See, e.g., Brewer v. Chater,* 103 F.3d 1384, 1393 (7th Cir.1997); *Arbogast v. Bowen,* 860 F.2d 1400, 1403 (7th Cir.1988). To make this determination, it is necessary to compare the demands of the past position with the claimant's present capacity. *See, e.g., Strittmatter v. Schweiker,* 729 F.2d 507, 509 (7th Cir. 1984).

Initially, it appears from the record that Plaintiff could not perform the functional demands of her specific job at Dove Bar as she actually performed it. At Dove Bar, Plaintiff performed her job standing. (R. 325.) However, the ALJ noted without apparent disagreement that, according to a medical assessment by Plaintiff's treating physician, Plaintiff could only stand approximately two hours per work day. (R. 15–16.) Plaintiff testified that she could only stand at one time around 15 to 20 minutes without having problems. (R. 327.) Tellingly, the VE testified that due to the job standing requirement, Plaintiff could not perform her job at Dove Bar as she previously had performed it. (R. 342.)

The next issue thus is whether plaintiff could perform her past relevant work as it is generally performed in the national economy. As stated, the plaintiff had the burden to show that she could not perform her past relevant work. The ALJ determined that plaintiff's testimony as to her residual functional capacity was not credible in view of the objective medical findings and other evidence of record. (R. 16, 18.)[3] The ALJ further found that plaintiff retained the capacity to perform her past relevant work as a sedentary[4] level product hand assembler. (R. 10, 18.)

There was "substantial evidence" of record to support the ALJ finding that Plaintiff could perform her past relevant work as a sedentary level product hand assembler. The ALJ relied on the testimony of the vocational expert. The vocational expert, having reviewed the entire record and heard the plaintiff's testimony, unequivocally testified: (a) that plaintiff could return to her past work as a production assembler; and (b) that Plaintiff's production assembler job is considered to be sedentary work as it is performed in the national economy and "most hand-assembly types of positions are performed at the sedentary level so there would be a variety of hand-assembly positions that she could perform" in the national economy. (R. 339–40, 342.) The above testimony was unobjected to, and the plaintiff's attorney at the hearing did not cross-examine the vocational expert on this point(s).[5]

---

3. An ALJ's credibility determination is entitled to "considerable deference." *Steward v. Bowen,* 858 F.2d 1295, 1302 (7th Cir.1988). *See also Edwards v. Sullivan,* 985 F.2d 334, 338 (7th Cir.1993).

4. As defined, 20 C.F.R. § 404.1567(a), 416.967(a). *See also* Social Security Ruling 96–9p (1996).

5. Parenthetically, Plaintiff's contention that the ALJ failed to consider Plaintiff's complaints of pain and dizziness is not persuasive. Here, the ALJ, *inter alia,* stated (R. 16):

> The administrative law judge does not find the claimant's testimony to be credible, nor indicative of an impairment of disabling severity.... Although the claimant does have some limitations, the objective clinical findings do not substantiate the level of symptoms as portrayed in her testimony. Her testimony of pain and limitations exceeded reasonable limitations from her conditions considering the record as a whole, including the treating physician's opinion.

In addition, "[a]n ALJ may discount subjective complaints of pain that are inconsistent with the evidence as a whole." *Knight,* 55 F.3d at 314. With respect to Plaintiff's complaints that her medicine caused side-effects of dizziness or drowsiness, Plaintiff has not pointed to any objective medical evidence on that point. Thus, what is left is a credibility determination, and, as stated, an ALJ's credibility determination is entitled to "considerable deference." *Steward v. Bowen,* 858 F.2d 1295, 1302 (7th Cir.1988). *See also Edwards v. Sullivan,* 985 F.2d 334, 338 (7th Cir.1993) ("[D]eterminations of credibility often involve intangible and unarticulable elements which impress the ALJ that, unfortunately leave no trace that can be discerned in this or any other transcript.").

Plaintiff also argues in her reply brief that the ALJ committed legal error by "failing to consider all relevant factors to articulate a rationale sufficient to support informed judicial review." It is true that an ALJ must state the reasons for a conclusion in "a manner sufficient to permit an informed review." *See, e.g., Orlando v. Heckler,* 776 F.2d 209, 213 (7th Cir.1985) (quoting *Garfield v. Schweiker,* 732 F.2d 605, 610 (7th Cir. 1984)). An ALJ, however, does not need to mention and assess in writing every piece of evidence

## II. *NEWLY SUBMITTED EVIDENCE*

After the ALJ issued his decision, Plaintiff submitted some additional evidence to the Appeals Council. (R. 304–17.) The evidence included medical records from Plaintiff's hospitalizations for hernia repair in February 1993, March 1994, April 1994 and October 1995. (R. 308–17.) The Appeals Council considered this additional evidence in Plaintiff's request for review, but concluded that the evidence did not "provide a basis for changing the [ALJ's] decision." (R. 4.) Plaintiff has filed a motion for remand and argues that this court should reconsider Plaintiff's claim in light of this additional evidence.

Where, as here, the Appeals Council has denied review and the ALJ decision is the final decision, it is ordinarily improper for a court to consider new evidence not presented to the ALJ because "the correctness of that decision depends on the evidence that was before the [ALJ]." *Eads v. Secretary of the Dept. of Health & Human Servs.*, 983 F.2d 815, 817 (7th Cir.1993). *See also Diaz v. Chater*, 55 F.3d 300, 305 n. 1 (1995). Nevertheless, a court may conduct a limited review of new evidence where the claimant alleges that the Appeals Council's denial of review rests on a mistake of law. *Eads*, 983 F.2d at 817; *Prak v. Chater*, 892 F.Supp. 1081, 1085 (N.D.Ill.1995). In addition, pursuant to the sixth sentence of 42 U.S.C. § 405(G), this court may remand the case for consideration of new and material evidence. *See Eads*, 983 F.2d at 817. Plaintiff argues both that the Appeals Council made a legal mistake in failing to grant review (based on the additional evidence) and that the additional evidence mandates remand.

Plaintiff states that the critical issue for deciding whether the Appeals Council erred in denying review or whether remand is warranted under 42 U.S.C. § 405(g) is the materiality of the evidence. To establish materiality, Plaintiff must show a "reasonable probability" that the ALJ would have reached a different disposition of the disability claim if presented with the new evidence. *See Sample v. Shalala*, 999 F.2d 1138, 1144 (7th Cir.1993) (quoting *Sears v. Bowen*, 840 F.2d 394, 400 (7th Cir.1988)).

This court has determined from the *de novo* review of the additional evidence submitted by Plaintiff that this evidence would not have a reasonable probability of causing a different disposition. First, Plaintiff submitted reports concerning operations performed on Plaintiff on February 19, 1993, March 26, 1994, and April 11, 1994. (R. 308–10.) It is difficult to understand how these records are "material" because the records predated both of Plaintiff's medical residual functional capacity assessments. (*See* R. 257–64, 287–91) Thus, any limitations which Plaintiff suffered in conjunction with these operations were considered in Plaintiff's aforedescribed RFC assessments of record.

In any event, contrary to Plaintiff's contention, the additional evidence of these hernia surgeries, and her hernia surgery and hospitalization in October, 1995 (R. 311–17), do not provide a basis for changing the ALJ's decision. This evidence elaborates on Dr. Kasbekar's diagnoses and treatment, but does not in any way connote a change in Plaintiff's RFC as described by Dr. Kasbekar in August 1995 and as found by the ALJ. (R. 15, 16, 287–91, 308–17.) Moreover, the additional evidence only confirms the ALJ's statement of Plaintiff's condition as a history of recurrent hernias requiring surgeries (R. 15–16) and the ALJ's conclusion that further surgery can again correct Plaintiff's condition, although she still will have ongoing lifting restrictions (R. 16, compare to Dr. Kasbekar's findings that Plaintiff had "tolerated the [October, 1995] procedure well" and that her October, 1995 post operative recovery was "uneventful" (R. 314, 315)).

In short, the subject evidence does not meet the definitional standard for materiality.

---

when reaching his or her conclusions. *See, e.g., Stephens, v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985). If the opinion "assures us that the ALJ considered the important evidence, and the opinion, enables us to trace the path of the ALJ's reasoning, the ALJ has done enough." *Id.* Here, our careful review of the ALJ's opinion discloses that it has met this standard and that the ALJ articulated a rationale sufficient to support informed judicial review. (R. 14–18.)

## CONCLUSION

In view of the foregoing, the Commissioner's decision is affirmed. The Plaintiff's motion for remand is denied.